FRANK E. PARSHLEY, Appellant, v. THE THIRD METHODIST EPISCOPAL CHURCH in the City of Brooklyn, Respondent.

1. RELIGIOUS CORPORATION — UNAUTHORIZED EMPLOYMENT — RATIFICATION. In an action brought against an incorporated Methodist Episcopal church to recover for services alleged to have been rendered and expenses incurred in prosecuting its pastor before the church tribunal and obtaining his suspension from the ministry, it appeared that defendant's board of trustees, acting officially, never employed the plaintiff or authorized his expenditures. Held, upon a review of the evidence, that the facts failed to establish an alleged ratification of the unauthorized employment, and hence plaintiff could not recover.

2. RELIGIOUS CORPORATION — POWER OF TRUSTEES. Quære, whether the trustees of an incorporated Methodist Episcopal church, having charge of its temporalities and representing it in its corporate capacity, have a legal right to contract a debt for the purpose of prosecuting before a church tribunal a minister charged with immorality.

Reported below, 4 Misc. Rep. 302.

(Argued October 17, 1895; decided November 26, 1895.)

APPEAL from order of the General Term of the City Court of Brooklyn, made June 26, 1893, which reversed a judgment in favor of plaintiff entered upon the report of a referee and granted a new trial.

This action was brought. to recover the value of services alleged to have been rendered to defendant by plaintiff, and also the amount of expenditures incurred by him in prosecuting the pastor of the defendant church upon charges of immorality, and securing his suspension from the performance of his ministerial duties.

The facts, so far as material, are stated in the opinion.

*Isaac H. Maynard* for appellant. The services and expenditures of the plaintiff for which this action is brought were rendered and incurred for the benefit of the defendant, and it was competent for the board of trustees of the defendant to bind the corporation to make compensation therefor. (20 Ency. of Law, 773, 775, 776 ; Tyler on Am. Ecc. Law, 54, § 100 ; Morawetz on Corp. § 4 ; Laws of 1875, chap. 79, § 4 ; Laws of 1876, chap. 176, § 1 ; *Robertson* v. *Bullions*, 11 N. Y. 243 ; *In re S. G. M. E. Church*, 21 Wkly. Dig. 81 ; *F. M. E. Church* v. *Filkins*, 3 T. & C. 279 ; *In re S. A. Church*, 14 Abb. Pr. 424 ; *Cammeyer* v. *Lutheran Church*, 2 Sandf. Ch. 208 ; *People's Bank* v. *St. Anthony's Church*, 109 N. Y. 521 ; *De Ruyter* v. *St. Peter's Church*, 3 N. Y. 242 ; *Petty* v. *Hooker*, 21 N. Y. 267 ; *People* v. *Fulton*, 11 N. Y. 94 ; *People ex rel.* v. *Conley*, 42 Hun, 98 ; *Bristor* v. *Burr*, 120 N. Y. 432 ; *Isham* v. *Fullagher*, 14 Abb. [N. C.] 363 ; *Lawyer* v. *Cipperly*, 7 Paige, 286 ; *G. R. Church* v. *Busche*, 5 Sandf. 666 ; *B. Church* v. *Witherell*, 3 Paige, 296.) The services and expenditures were rendered and incurred by the plaintiff under an employment by at least four members of the board of trustees, including the acting president, assembled and assuming to act as a board, and this employment was subsequently ratified and adopted by a full board of trustees, and whatever irregularity or defect there might have been in his original employment, it was thus rendered valid *ab initio* and

binding upon the defendant. (*Fister* v. *La Rue*, 15 Barb. 323 ;
Angell & Ames on Corp. chap. 8, § 58; *Danforth* v. *S. T.
Co.*, 12 Johns. 227; *Hoyt* v. *Thompson*, 19 N. Y. 207 ;
*Beattie* v. *D., L. & W. R. R. Co.*, 19 Wkly. Dig. 334 ;
*Prindle* v. *W. L. Ins. Co.*, 73 Hun, 448 ; 1 Waterman on
Corp. 352, § 109 ; 1 Waterman on Corp. 358, 359 ; *Scott* v.
*M., etc., R. R. Co.*, 86 N. Y. 200 ; *Castle* v. *Loomis*, 78 N.
Y. 131 ; Beach on Priv. Corp. §§ 193, 195, 196 ; Morawetz
on Corp. §§ 80, 1618 ; *Oakes* v. *C. W. Co.*, 143 N. Y. 430 ;
*Ogden* v. *Alexander*, 140 N. Y. 356.) This court cannot
review the facts. (*Cudahy* v. *Rhinehart*, 133 N. Y. 248 ;
*Smith* v. *Pettie*, 70 N. Y. 73 ; *Kane* v. *Cortesy*, 100 N. Y.
132; *Waite* v. *A. Ins. Co.*, 13 Hun, 371 ; *Powell* v. *Powell*,
71 N. Y. 71; *Hart* v. *H. B. Co.*, 80 N. Y. 622; *Scott* v. *M.
Church*, 50 Mich. 528 ; Morawetz on Corp. [2d ed.] §§ 627,
629.)

*George G. Reynolds* for respondent. The defendant
never ratified or approved the plaintiff's claim. (*Landers* v.
*M. E. Church*, 114 N. Y. 626.) The claim made by the
plaintiff is of such a nature that even the board of trustees of
the defendant would have no right to pay or do any act that
would bind the defendant or make it liable for such claim.
(Laws of 1875, chap. 79 ; *People ex rel.* v. *Conley*, 42 Hun,
98; *Bristor* v. *Burr*, 120 N. Y. 432 ; *Bowden* v. *McLeod*,
1 Edw. Ch. 568.)

FINCH, J.  It is not at all certain that the trustees of the
church, having charge of its temporalities and representing it
in its corporate character, have a legal right to contract a debt
for the purpose of prosecuting before a church tribunal a
preacher charged with immorality.  But, waiving any consid-
eration of that question, and assuming for the sake of the argu-
ment that such power exists, it still seems to me quite certain
that the General Term were right in holding that the corpo-
rate body never became bound or liable for the debt.

74

There is no room for dispute about the fact that the trustees acting officially never employed the plaintiff or authorized his expenditure. A minority of the board, acting only as individuals and promising merely individual and voluntary aid, alone set the plaintiff in motion. The trial court so found and planted its award of judgment wholly upon the ground of ratification, and it is upon that question that the courts below differed and to which our attention is required.

Two main and principal facts are relied on by the appellant, both of which have some peculiar features. There came a time when the plaintiff was pressing for his pay, and the church corporation was about to sell its property to the bridge company. Counsel was, of course, employed to conduct the negotiations and manage the proper transfer of title. That counsel was Judge Groo, who promised to act without compensation or, at least, without charge for his time and services. Nevertheless, the trustees passed a resolution to pay him, first five thousand, and later six thousand dollars, for his services and expenses as counsel. That was the corporate action on its face, and there was no other. But behind it stood the motive for it and the explanation of it. Between the trustees, acting individually and not in their corporate character, and their counsel there was an understanding that the money voted to Groo should be by him applied to the discharge of plaintiffs' claim, and thirty-five hundred dollars of it was in fact so applied. Obviously, there was here an attempt to do indirectly what it was supposed could not be done directly, and the indirect action was not at all and not intended to be of a corporate character. That was carefully avoided and meant to be avoided, and as the result of what was done the plaintiff acquired, not a legal right against the corporation, but a moral right against Judge Groo, founded on the latter's good faith. The caucus action of the individual trustees was clearly personal and non-official. (*Landers* v. *Frank St. Methodist Church*, 114 N. Y. 626.) As such it did not and was not intended to bind the church. It recognized, not a legal obligation of the church corporation, but a moral duty

of its members which they sought to perform through the
agency and operation of an entirely different legal obligation.
The very form and manner of the transaction assumed that
the plaintiff had no legal claim against the corporation ; that
it had no right to pay him, and that it was only by an artifice,
and through the liberality of Judge Groo, that the moral duty
of reimbursing the plaintiff could be performed.    The trus-
tees had sought to obtain funds for him through voluntary
subscriptions.    They had recognized that no corporate moneys
were available for that purpose, and failing to secure a volun-
tary contribution resorted to the questionable measure of pay-
ing the corporate funds to Judge Groo as a counsel fee,
leaving him, out of what had become his own money, to do
justice to the moral claim of the plaintiff.    Whatever else
may be said about the transaction it is very certain that it did
not amount to a ratification of the acts of individuals and a
corporate assumption of their obligations.

But a further step was taken.    The plaintiff continued to
press for reimbursement out of the corporate treasury, evi-
dently insisting that he had a legal claim against the church,
and in 1892 the board of trustees passed two resolutions.    One
of them appointed a committee to examine the claim and
agree upon the sum, if any, to be paid, but providing
that the committee should "confer with and act under the
advice of" the attorney of the board.    The second resolution
authorized the president and treasurer of the board to pay
plaintiff the sum, if any, found due by such committee.
These resolutions admitted nothing, acknowledged nothing.
They left the question of the corporate liability open to the
decision of the committee, acting under the advice of counsel.
There was a legal question to be determined arising upon and
out of the facts, the answer to which would settle the doubt
about liability and indicate what was the corporate duty.    To
meet that emergency the committee were authorized to act
only after a conference with and under the advice of the coun-
sel of the board. . This was a vital and essential condition of
the committee's authority, without obedience to which they

had no power to act at all. They disregarded that condition, completely ignored the counsel, neither sought nor took his advice, and made a report in favor of allowing plaintiff's claim. The board, however, refused to accept the report, as not made in accordance with the condition imposed. Here, again, I am unable to see proof of a ratification. The act of the committee never became the act of the board. There was no original authority conferred upon them to act independently of the advice of counsel, and their unauthorized action was rejected and not confirmed by the board. It is suggested that the resolutions admit the liability but question only the amount. I cannot so read them. They call for an investigation, guided by counsel, as to whether any sum is due at all, and do not admit an obligation for some amount.

There were some minor facts pressed upon our attention as involving a ratification. One of them was the resolution of the official board in 1888. That board consisted of the trustees, the stewards, the class leaders, the Sunday school teachers, and the local preachers. It had its place and its duties in the Methodist order and discipline, but did not not represent and could not legally bind the corporation. What it did was to say that the plaintiff acted "in the interest of the church," and to recommend a voluntary contribution to defray the expenses. The word "church" was here used in its broad and moral sense, as covering the Methodist church generally in its religious character and aggregation, and not as meaning the particular corporation. It is "*the*" church, and "the M. E. church," and not the specific corporate defendant; and the recommendation is to contribute to the expenses, and not to the defendant to enable it to pay.

Our attention is drawn also to the resolution for the removal of Millen from the parsonage, which recites his suspension from the ministry upon the charges presented against him, and the argument is that the defendant took the benefit of plaintiff's services, and so must pay for them. Very little need be said about that. The rule only applies where the party is free to take them or not. Here the defendant did

not take them at all, and simply sought to remove a tenant holding over without right.

The order of the General Term should be affirmed and judgment absolute be rendered for the defendant, with costs.

All concur, except Peckham and Gray, JJ., dissenting.

Ordered accordingly.